## Declaration of Michael E. Lawlor, Esquire

1.  I am an attorney duly admitted to practice law in, *inter alia*, the United States District Court for the District of Columbia; I have continuously practiced law since my admission to practice by the Court of Appeals of Maryland in 1997.

2.  I have personal knowledge of all the facts set forth herein, except as otherwise noted to be statements on information and belief, and I am able and willing to testify accordingly.

3.  After Defendant Jamison was sentenced by this Honorable Court to six months' imprisonment, I was retained by her to represent her in matters relating to her surrender to and her placement within the BOP, and also her subsequent health care within the BOP's medical services divisions; the undersigned counsel only began to review the instant case after adoption of the PSI and sentencing, and has had no prior opportunity to develop Defendant Jamison's co-morbid medical conditions or needs.

4.  In the course of my representation, I have reviewed this matter's (1) Docket Report; (2) transcripts of the hearings conducted on or about (a) March 10; (b) May 31; (c) June 28; and (d) July 7, 2006; (3) the instant Plea Agreement, dated January 24 and signed March 6, 2006; (4) the instant PSI as prepared April 26 and Revised May 19, 2006; (5) the Letter to this Court regarding competency, from Licensed Psychologist Mary Elizabeth Kenal, Ph.D., of the District of Columbia's Department of Mental Health, Forensic Services Administration, Legal Services Branch, dated June 29, 2006; (6) the Judgment in a Criminal Case, dated July 7 and filed July 19, 2006; (7) prior medical letters from Stuart J. Goodman, M.D., and Saied Jamshidi, M.D., dated April 1 and April 9, 2004, respectively; (8) the most recent cover letter from Dr. Goodman, dated April 1, 2006, and noting Defendant Jamison's self-report of worsening neurological conditions in a re-interview occurring on or about March 28, 2006; (9) the Notice of Designation dated August 22, 2006, from

Senior United States Probation Officer and Voluntary Surrender Program Coordinator Sondrá A. Rhodes; and (10) this Court's Order of Surrender dated and filed August 24, 2006.

5. There is no indication in this matter's Docket Report or other reviewed case materials that prior counsel filed any objections or explications to the Presentence Investigation Report ("PSI"), including Defendant Jamison's inability to recall her diabetes-related (and perhaps other) medications. *See* PSI at 15, "Addendum to the Presentence Report;" *see also* PSI at 8, ¶ 42.

6. There is no indication that prior counsel attended Defendant Jamison's PSI interview on or about March 31, 2006, or ever addressed her self-reported medical conditions, prognoses, and current treatment regimen, or that prior defense counsel ever sought a medical or other designation from the Court for the BOP. *See* PSI at 9, ¶ 45, and at 7-8, ¶¶ 38-43.

7. Defendant Jamison's most recent diagnostic letter submitted for purposes of her PSI, and thus also for purposes of BOP designation, was a neurological examination dated April 9, 2004, by Stuart J. Goodman, M.D., of Clinton, Maryland. *See* PSI at 8, ¶ 41 (referencing also neurological diagnosis letter from Dr. Saied Jamshidi, ostensibly prepared April 9, 2004) [true copy attached hereafter as Exhibit "1"].

8. After reviewing the PSI and Defendant Jamison's medical self-reports contained therein, and based upon my experience as a Federal criminal defense attorney, I determined that (1) these self-reports, now nearly six-months-old, are neither complete nor current; (2) the BOP therefore seems unlikely to have considered complete and current medical data when exercising its discretion to designate Defendant Jamison; and (3) to the extent only self-reports to a United States Probation Officer were addressed in the PSI, the data seems unlikely to be either in a format or of a scientific quality necessary for the BOP's typical medical designation and Health Services care analyses.

9. After reviewing news media reports and certain Federal agency records, numerous questions appear whether the BOP in general, or the Federal Correctional Institution ("FCI") Danbury, Connecticut in particular, is staffed to and otherwise capable of ministering to Defendant Jamison's extensive medical needs.

10. After reviewing the BOP's current population report regarding FCI Danbury, and comparing that figure to the rated capacity of FCI Danbury as noted by the BOP in a January 2006 response under the Freedom of Information Act ("FOIA"), it appears that FCI Danbury is grossly overcrowded and, logically, incapable of providing timely programming and other services, including medical services, to all its inmates.

11. After reviewing the BOP's advertisement for available medical service positions open and available for new employees, it appears that both the nursing and pharmacy units at FCI Danbury are understaffed.

12. Even if the BOP in general, and FCI Danbury in particular, are capable of ministering to this medically-needy inmate, I respectfully submit a complete and current diagnosis and prognosis from appropriate professionals to the BOP's Health Services Division will facilitate her continued marginal health maintenance.

13. Particularly given the extreme overcrowding of FCI Danbury, and the logical stress placed on that facility's short-handed medical services staff, the BOP may act on current and complete medical data differently than assignment to FCI Danbury; as the administrative agency in charge of such decisions, it would seem incumbent upon the Court to allow this appropriate agency an opportunity to exercise its informed discretion.

14. With an additional 60 days before Defendant Jamison's self-surrender – or actually 62 calendar days, to prevent her surrender on a typically overburdened Monday morning – counsel

can ensure that Defendant Jamison presents complete and current medical information to the BOP, and that the BOP has appropriately exercised its wide discretion with current medical information, and also that the BOP can in fact provide for her complex medical needs at an appropriately-designated facility.

15.    I notified AUSA Howard Sklamberg, on Friday, September 8, 2006, by phone, of my intention to file this motion.

**FURTHER** the Affiant sayeth naught.

                                                                                 S /_____
                                                                                 Michael E. Lawlor

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Howard Sklamberg, Esq., Office of the United States Attorney, 555 Fourth Street, N.W., Room 5882, Washington, D.C. 20530, this 11th day of September, 2006.

S/_____
Michael E. Lawlor